Plaintiff having fully paid defendant for all the services performed for him under their contract, a threat by defendant that unless a further sum of money was paid it would remove the sprinkler system from the owner's building by force, it seems to me, was a threat of such injury to property as constituted duress.

LAUGHLIN, J., concurs.

(164 App. Div. 376)

RICE v. H. P. CUMMINGS CONST. CO.    (No. 264-85.)

(Supreme Court, Appellate Division, Third Department.    November 11, 1914.)

APPEAL AND ERROR (§ 1003*)—DEATH OF SERVANT—LIABILITY OF MASTER—EVIDENCE.

Where the employer's liability for the death of a carpenter by falling from a structure erected below a dam for the use of workmen depends on whether the accident occurred near the bank or near the center of the river, as alleged in the complaint, the latter location being where the structure was being torn down and the want of guard railings would not have constituted negligence as to plaintiff's intestate, and where plaintiff's evidence is in direct conflict with the complaint on this point, and defendant's evidence sustains it thereon, a judgment on a verdict for plaintiff will be reversed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938-3943; Dec. Dig. § 1003.*]

Howard, J., dissenting.

Appeal from Trial Term, Warren County.

Action by Nettie S. Rice, as administratrix of the goods, chattels, and credits of Bird L. Rice, deceased, against the H. P. Cummings Construction Company. . From judgment for plaintiff, defendant appeals.    Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Ainsworth & Sullivan, of Albany (Charles B. Sullivan, of Albany, of counsel), for appellant.

C. E. Fitzgerald, of Glens Falls (James McPhillips, of Glens Falls, of counsel), for respondent.

WOODWARD, J.    The plaintiff's intestate was employed as a carpenter engaged in the construction of the scaffoldings and super-structures necessary to the building of a dam across the Hudson river between Corinth, on the Saratoga side, and Luzerne, on the Warren county side.    A long runway or bridgelike structure had been erected just below the dam for the use of the workmen in getting materials to the work.    This bridge had a surface about 16 feet in width, and at intervals, and from time to time, small platforms were built out from the side of this main runway for the purpose of enabling the workmen to go out upon the same with small carts loaded with concrete, which was dumped into the forms previously prepared for the arches between the piers which had been filled from the main structure.    These arches were about 15 feet long between the various

piers, and the plaintiff's principal witness, one Hall, a water boy, who claims to have been an eyewitness of the accident resulting in the death of plaintiff's intestate, testifies that the platform from which decedent fell was not three forms from the Luzerne side—"I think there was one form between him and the Luzerne shore"—which, with the pier, would make the distance about 19 or 20 feet from the Luzerne side. This same relative distance appears to be claimed by the plaintiff's other witness, and we call particular attention to this fact, for the liability of the defendant concededly depends upon whether the story told by this boy, and corroborated by one other witness in a measure, is true.

The plaintiff's complaint, which consists of a blanket pleading, intended to cover any possible state of facts which might be developed by the testimony, seems to proceed upon the theory that the defendant is liable for the injury resulting in decedent's death by reason of a failure to provide a safe scaffolding equipped with a railing at least 34 inches in height, or that there was some defect in the materials used in the construction of these side platforms; but upon the trial the latter feature seems to have been practically abandoned, and the case went to the jury upon specific questions of fact, one of them being whether the accident was caused because there was no guard rail on the small platform, and the jury answered this in the affirmative. It was practically conceded that the defendant was not bound to equip these platforms with railings for the protection of the plaintiff's intestate, if he was at the time of the accident engaged in the work of constructing or tearing down the very platform from which he fell; but the plaintiff insists that the testimony of Hall and the other witness shows that decedent was at the time of the accident upon a platform which had been constructed and in position at least two days, and that he was at the time engaged in nailing a brace used in supporting the electrical equipment used in the work, and that he was, therefore, within the protection of the statute in reference to scaffoldings.

There is no dispute that the decedent was a carpenter employed generally in the work of constructing the platforms, etc., connected with the work, and the defendant's witnesses, one of them was an eyewitness of the accident, all testify that the decedent was engaged in tearing down a platform near the center of the river at the time of the accident; and if this is the truth the defendant is concededly not liable, for that was the very work for which he was employed, and the railing could not be maintained while the platform was itself being torn down. There is a conflict of evidence upon this point. The evidence on behalf of the plaintiff is direct and positive, and is furnished by one alleged eyewitness and another who claims to have been present, and who missed seeing the immediate fall only because he had turned away for a moment; and the evidence on behalf of the defendant is equally direct and positive, one of the witnesses having been at work with Rice and witnessed the fall, and he is supported in corroborative details by six or seven other witnesses, none of whom are weakened by cross-examination as to the essential facts coming with-

in their observation.    While ordinarily such a conflict of evidence, passed upon by the jury, would justify this court in affirming the judgment, we are not satisfied that justice has been done in this particular case, and it should be submitted to another jury, because the verdict is against the weight of evidence as directed to the issues presented by the pleadings.

The complaint, and the notice served under the provisions of the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), allege that the plaintiff's intestate, while in the exercise of due care, and while—

"engaged in the performance of his duties upon said scaffolding at a point just beyond the center of said Hudson river and towards the town of Luzerne, Warren county, N. Y., and was, among other things, nailing a board in an upright position near the outer edge of said scaffolding, he lost his balance, on account of said scaffolding being in the dangerous and defective condition aforesaid, and fell off the outer edge of said scaffolding to the rocks and river 50 feet below."

All of defendant's witnesses testify substantially in harmony with the allegation of the complaint as to the location of the platform from which the decedent fell, and there is no evidence in the case disputing that the point alleged in the complaint and testified to by the defendant's witnesses was in a position where it was within the line of decedent's duty to be engaged in tearing down this particular platform. These witnesses all agree that Rice, the decedent, was engaged in such work, that he and the eyewitness Burgess were engaged in tearing up the planks, and that decedent stepped upon the end of one of those which had been loosened and fell.    On the other hand, the plaintiff's eyewitness testifies, in contradiction of the allegations of the complaint, that the accident occurred within 20 to 30 feet of the Luzerne shore, and no practical reason is shown why decedent should have been engaged in any such work as this witness says he was performing.

It is certainly very remarkable that the defendant's witnesses should agree with the allegations of the complaint as to the point of the accident, and that there should be a clear and sufficient reason why the decedent should have been at this particular point, if it was true that he was at the point testified to by the plaintiff's witness, and engaged in an occupation for which no possible reason is suggested.    The allegations of the complaint are supported, as to the location of the accident, not by the testimony of the plaintiff's witnesses, but by those of the defendant, and there is a very strong probability that this change of attitude on the part of the plaintiff was an afterthought, designed to bring the case within the statute.    The case presented by the defendant's witnesses is probable, it is what the decedent would probably be doing in the natural order of the work as it is shown to have existed at the time of the accident, and it is much more likely that the allegation of the complaint as to the location of the accident is in harmony with the truth, as testified to by the defendant's witnesses, than that the decedent should have been at the point where he is located by the plaintiff's witnesses, when it was obvious that the case

could not be supported at the point where it is alleged to have occurred.

Ordinarily, of course, a short distance of error in the location of the accident would not be material; but here the very essence of the liability depends upon. the location. If the .accident occurred near the center of the Hudson river, as the complaint says it did, then there was no possible reason for the decedent to be doing the work which the plaintiff's witness says he was doing. The only object of his being at the center of the river would be to be taking down the platform at that point. There is no dispute that this was the work under way there, and that would be fatal to the plaintiff's case. It only required a little invention to bring the case closely within the words of the statute, and it seems to us that the case is one where this court is justified in holding that the verdict is against the weight of the evidence, and that it should be submitted to another jury.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur, except HOWARD, J., who dissents.